UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | No. 20 CR 637 |
| v. ) | |
| ) | Honorable Heather K. McShain |
| JEREMIAH HARRIS ) | |

**GOVERNMENT'S MOTION FOR PRETRIAL DETENTION**

For over two years the defendant, Jeremiah Harris exploited and violated at least ten minor boys by repeatedly requesting the boys send him sexually explicit images of themselves. Harris' criminal conduct also included hands-on exploitation when he sexually assaulted a fifteen-year-old boy. Harris repeatedly targeted young boys by reaching into their bedrooms through his cell phone and used guilt, threats, and money to persuade them to engage in sexually explicit activity which Harris would oftentimes record and masturbate to. Harris' crimes were not just limited to the internet. By his own admission Harris attempted to meet all of his minor victims in person and sexually assaulted at least one minor boy, in an unlocked public bathroom, at a public event that was attended by other adults in the cheer community. Even when Harris was tipped off to a possible investigation into his crimes, he was not able to control his impulses and he continued to victimize multiple other children while living in a residence with responsible adults present. Harris, by his own admission, has victimized at least 5 to 10 children who are all forever damaged by his criminal conduct. Harris must not be allowed to harm another child

1

and he should be detained pending trial as he is a clear and present danger to the community, most notably defenseless children.

I. **Argument**

Harris is currently charged by criminal complaint with one count of Sexual Exploitation of Children, in violation of Title 18, United States Code, Section 2251(a). Harris faces a mandatory minimum sentence of 15 years' imprisonment and a maximum sentence of 30 years' imprisonment.[1] Based on the current charge there is a statutory presumption of pretrial detention based on Harris' danger to the community. *See* 18 U.S.C. § 3142(e)(3)(E). Moreover, as described below, every factor Congress directs the Court to consider in making detention decisions weigh heavily in favor of Harris' detention as a danger to the community.

**1. Nature and Circumstances of the Offense.**

The first factor Congress directs the Court to consider is the nature and circumstances of the offense, specifically including "whether the offense is a crime of violence . . . or involves a minor victim." 18 U.S.C. § 3142(g)(1). Harris' crime here is both a crime of violence and involves a minor victim.[2]

As detailed in the criminal complaint, Harris first targeted Minor 1 when Minor 1 was just 13 years old. In Harris' initial contact with Minor 1, he quickly went

---

[1] While at this point Harris is charged only with one count by a complaint, as discussed in the complaint and in this filing, there is evidence that Harris' conduct included additional counts of Sexual Exploitation of Children, in violation of 18 U.S.C. §2251(a)), receipt of child pornography, in violation of 18 U.S.C. §2252A, and travelling with intent to engage in illicit sexual conduct with a minor, in violation of 18 U.S.C. §2423(b).
[2] Unfortunately, Harris' course of conduct involves many minor victims.

2

from confirming the boy was just 13 to asking for "booty" pictures. Harris used his age advantage to manipulate Minor 1 in the same way that all adult sexual predators are able to manipulate a child. Through a combination of guilt, compliments, and what has been described by multiple victims as "unrelenting persistence," Harris was able to coerce Minor 1 into taking sexually explicit photographs of himself to feed Harris' deviant desires. This victimization of Minor 1 was not a one-time offense by Harris. It continued for over a year involving the production and transportation of dozens of child pornography images all consumed by Harris.

Harris would also oftentimes send photographs of his own penis to Minor 1.[3] It is important to note that Minor 1 was victimized repeatedly by Harris despite Minor 1 having a parent who often reviewed the contents of Minor 1's cell phone, and despite Harris living in a residence with responsible adults present. The circumstances of Harris' conduct show that the presence of involved, caring adults is unfortunately not enough to prevent online exploitation, which can be completed in minutes from any smartphone, tablet, or computer.

The seriousness of this offense was not limited to just Harris' year-long online exploitation of Minor 1. Harris' deviant criminal compulsions included multiple attempts by Harris to commit a hands-on sexual assault of Minor 1. At two separate public cheerleading events, attended by many other responsible adults Harris attempted to engage in illicit sexual conduct with Minor 1. At one of these events,

---

3 This is also a crime under 18 U.S.C. §1470.

3

Harris followed Minor 1 into a bathroom and solicited oral sex from Minor 1. Minor 1's escape from that bathroom did not deter Harris from his criminal pursuit. Just a few months later, at another cheer event attended by many responsible adults in the cheer community, Harris again reached out to Minor 1, telling him he had found a location where he intended to engage in illicit sexual acts with Minor 1. Minor 1 again refused Harris' persistent criminal actions.

While Minor 1 was fortunately able to escape Harris' multiple attempts to commit a sexual assault, another minor victim was not so fortunate. Law enforcement recently interviewed another victim who was sexually assaulted by Harris, inside a public bathroom, during an event attended by many responsible adults. This child was only 15 years old when Harris followed him into the bathroom and sodomized the boy.[4] Harris' sexual assault of this boy in such a public place, in an unlocked public bathroom, during an event attended by dozens of responsible adults demonstrates that Harris either does not care about being caught committing his offenses, or simply cannot stop himself. Either way, it is indicative of why house arrest, even with dedicated third party custodians, is simply not enough to protect the community from this child predator.

As Harris' fame grew through his acting career, Harris appears to have added to his predatory arsenal by using money to exploit his minor victims. Harris' most

---

4 Harris began grooming this victim when the victim was just 13 years old. Like his other minor victims, Harris continuously pressured this minor victim to send him sexually explicit photographs and videos of himself by text for a period of years.

recent victims were offered substantial sums of money, sometime over $1,000, to perform sexually explicit conduct for Harris over Snapchat or FaceTime while Harris masturbated. Harris also paid these minors for child pornography images in which he requested photos of their anuses to be depicted.

Established in the criminal complaint, and corroborated by the continuing investigation, is that Harris is a dangerous child predator who targets children all over the country for purposes of sexual exploitation. Harris not only commits his offenses online, but he seeks to meet his victims in person for purposes of hands-on offenses. Harris himself admitted in his interview that every time he encountered a child online--a number of victims which Harris himself stated was between 5 to 10 children--Harris sought to meet them in person for a hands on sexual offense. Harris was often unsuccessful in his attempts, but the persistence shows the danger Harris faces to any child he can reach over the internet. Harris exhibits all the signs of a serial child predator and unless and until he receives significant mental health sex offender treatment, he will remain a danger to any child he encounters, either online or in person.

    **2.    The Weight of the Evidence Against The Defendant.**

The second factor Congress directs the Court to examine is the weight of the evidence against the person. 18 U.S.C. § 3142(g)(2). As demonstrated in the 27 page criminal complaint the weight of the evidence against Harris is overwhelming. Minor 1 describes Harris' relentless pursuit of child pornography images which Minor 1

5

created and sent to Harris as requested. The victim's mother viewed some of these images on the victim's phone at the time she discovered them. The screen shots of communications between the victim and Harris corroborate the victim's statements. Finally, Harris himself admitted to requesting and receiving pornographic images from Minor 1 in his voluntary statement to the FBI. Moreover, law enforcement has now spoken to multiple other victims who all describe near-identical criminal conduct by Harris involving the sexual exploitation of minors.

    **3.    History and Characteristics of the Defendant.**

The third factor Congress directs the Court to examine is the history and characteristics of the defendant, including "the person's character . . . and mental condition." 18 U.S.C. § 3142(g)(3). Here again this factor weighs heavily in favor of detention. Harris' actions of targeting young boys and exploiting them through multiple methods of manipulation demonstrates a habitual, persistent, obsessive course of conduct. It is certainly possible that Harris' predatory actions are caused, in part, by mental illness or past traumas. However, unless or until Harris receives long-term, intensive therapy to change his mindset and help to control his urges, his risk of recidivism will remain unacceptably high.

    Harris' sexual assault of one minor victim in an unlocked public bathroom at a cheer event with other individuals coming and going again demonstrates such recklessness that either Harris wanted to be caught or he simply cannot control his impulses. Additionally, Harris' recent use of his wealth to further manipulate his

6

victims is troubling and demonstrates another risk of releasing someone on home confinement who is willing to use their wealth to manipulate others to do things for themselves.

> **4. The Nature and Seriousness of the Danger to Any Person or the Community That Would Be Posed By The Defendant's Release.**

The fourth and final factor which directs the Court to assess the danger to the community the defendant's release would pose is the true impetus of the government's motion for Harris' detention. 18 U.S.C. § 3142(g)(4). Harris, by his own admission, has already forever damaged at least between 5 to 10 minor boys through his criminal actions. This includes the sexual assault of one of his victims and Harris' own admission that he sought an in-person encounter with every minor he contacted. Harris has been able to harm most of his victims from the comfort of his own home which is why home incarceration will simply not protect the community.

There are two specific examples in Harris' history which demonstrate exactly why the community will not be protected if Harris is released on home incarceration. The first is Harris' actions after he was notified by a friend of the investigation into his crimes. After a friend who owns a gymnastic venue told Harris that they were recently contacted by someone about specific allegations against Harris involving a minor boy, Harris knew his secret was exposed and that he had a problem. Based on this tip, Harris later admitted to law enforcement that he got rid of his cell phone, knowing that the evidence of his crimes was contained on his cell phone. It is what Harris did next that demonstrates he simply cannot be trusted to follow the rules of

7

home incarceration. Even *after* Harris was tipped off to the investigation and he destroyed his cell phone, he still could not stop himself from acting out on his criminal desires. Just weeks after getting rid of his cell phone Harris used his new "clean" phone to again reach out and victimize minor boys. This demonstrates that Harris either simply cannot control his criminal impulses, or he simply does not care about getting caught. Either way it sends this Court a clear message that he is someone who will not be able to control himself from attempting to harm additional minor victims if given the chance on home incarceration.

The second instance that demonstrates both Harris' dangerousness and why he should not be released on home incarceration is Harris' sexual assault of a 15 year old child at a public event, in a public space, with other responsible adults in the building. The brazenness that someone needs to exhibit in order to sexually assault a child in an unlocked public bathroom indicates again either Harris simply cannot control his criminal impulses which make him a poor candidate for release or he simply wants to get caught.

Regardless, it certainly does not comfort the government that this is a person who will somehow be controlled by a group of cheer moms agreeing to stay in a home with him. If a full gymnasium of cheer mom and dads is not enough to deter Harris from committing these crimes, a single cheer mom will have no chance at protecting the community from Harris.

Moreover, Harris' proposal of having multiple custodians cycle in and out of his residence is unworkable and will not protect the community. While the custodians may have the best intentions, it is incredibly difficult to keep an adult away from all internet-enabled devices. The proposed primary custodian will be working from Harris' residence full time, which means there will be large chunks of each work day when she will be focused on work and not on Mr. Harris. If defendant wished to obtain access to the internet, he could use a device belonging to one of his custodians while they are distracted, or could even pay a fan or an associate to sneak one to the residence. The third party custodians simply are not enough to protect the public from a brazen sexual predator.

### III. CONCLUSION

For the foregoing reasons, this Court should order Harris detained pending trial.

    Respectfully submitted,
JOHN R. LAUSCH, JR
United States Attorney

BY:   /s Christopher V. Parente
Christopher V. Parente
Assistant United States Attorneys
219 South Dearborn Street, 5th Floor
Chicago, Illinois 60604
(312) 886-2447