IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 20 CR 637 |
| v. | ) | Hon. Heather K. McShain |
| | ) | |
| JEREMIAH HARRIS, | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT JEREMIAH HARRIS'S MOTION
FOR PRETRIAL RELEASE ON CONDITIONS**

Defendant JEREMIAH HARRIS, by and through his attorneys, BREEN & PUGH, respectfully moves this Honorable Court, pursuant to 18 U.S.C. § 3142, to release Mr. Harris on conditions pending trial.

## INTRODUCTION

On September 17, 2020, law enforcement arrested Mr. Harris on a federal arrest warrant in the above-captioned case, after the filing of a Criminal Complaint that alleged, from December 2018 and continuing through March 2020, Mr. Harris "knowingly employed, used, persuaded, induced, enticed, and coerced a minor, namely Minor 1, to engage in sexually explicit conduct for the purpose of producing a visual depiction of such conduct, which visual depiction defendant knew and had reason to know would be transported and transmitted using any means and facility of interstate and foreign commerce, and which visual depiction was transported and transmitted using any means and facility of interstate and foreign commerce" in violation of 18 U.S.C. § 2251(a).

Mr. Harris appeared before Magistrate Judge Weisman on September 17, 2020 and the matter was continued based on the Government's oral request for pretrial detention. Pretrial Services submitted a report on September 18, 2020, recommending pretrial release with conditions provided a suitable third-party custodian could be arranged. On September 21, 2020, the undersigned counsel for Mr. Harris reported to Magistrate Judge Harjani that Mr. Harris was not in a position to propose a suitable third-party custodian, which was due to the negative and prevalent media (and social media) focused on Mr. Harris and the families who are the most suitable third-party custodians for Mr. Harris.[1] As such, Mr. Harris waived detention until such time as suitable third-party custodians could be secured.

Since the initial waiver of Mr. Harris's detention hearing, the defense informed the Government and Pretrial Services that the defense would be proposing that, if the Court determined pretrial release on conditions was appropriate in this case, Mr. Harris's longtime guardian and maternal figure, as well as other parents from the "cheer community" were willing to serve as Mr. Harris's third-party custodians. Additionally, Mr. Harris offers the townhome he owns, ███████████████ ██████, as additional collateral for any proposed secured bond. For the reasons stated herein, Mr. Harris respectfully submits that the Court should deny the Government's Motion for Pretrial Detention and release him on conditions.

## LEGAL STANDARDS

The Bail Reform Act of 1984 ("the Act") favors a defendant's release over

---

[1] After the passing of Mr. Harris's late mother while he was in high school, various families in the competitive cheerleading community essentially stepped in to help raise Mr. Harris.

pretrial detention. *United States v. Barnett*, 986 F. Supp. 385, 392 (W.D. La. 1997). The Act requires a defendant's "pretrial release under the least restrictive condition or combination of conditions that will reasonably assure the appearance of the person as required and the safety of the community." *Id.* The Act provides a court with four options with respect to release or detention: (1) release on personal recognizance; (2) release on conditions; (3) temporary detention to permit revocation of conditional release; and (4) detention. 18 U.S.C. § 3142(a) (West 2020).

The Court may only deny a defendant's release where there are no conditions that will reasonably assure the defendant's appearance or the safety of the community. *United States v. Hammond*, 204 F. Supp. 2d 1157, 1161 (E.D. Wis. 2002). "Only in rare circumstances should release be denied, and doubts regarding the propriety of release should be resolved in favor of release." *Id.*; *United States v. You*, 08 CR 181, 2008 WL 2755067, at *2 (N.D. Ill. July 14, 2008); *United States v. Ali*, 05 CR 936, 2005 WL 3115876, at *2 (N.D. Ill. Nov. 18, 2005). The wide range of conditions available to the Court ensures that *very few* defendants are subject to pretrial detention. *Barnett*, 986 F. Supp. at 392.

In determining what conditions will assure a defendant's appearance, the Act directs courts to consider: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) the history and characteristics of the defendant; and (4) the nature and seriousness of the danger to the community posed by the defendant's release. 18 U.S.C. § 3142(g) (West 2020). In order to detain a defendant prior to trial, the government bears the burden of proof in showing that

3

a defendant poses a flight risk or a danger to the community. *United States v. Jones*, 804 F. Supp. 1081, 1088 (S.D. Ind. 1992). Risk of flight must be proven by a preponderance of the evidence. *Id*. Alternatively, danger to the community must be proven by clear and convincing evidence. *United States v. Salerno*, 481 U.S. 739, 750 (1987). However, the instant offense is one that triggers a rebuttable presumption set out in 18 U.S.C. § 3142(e)(3)(E) that no condition or combination of conditions will assure the safety of any other person and the community pertaining to individuals charged with an offense involving a minor. Given the nature and circumstances of the purported offense and the history and characteristics of the defendant, Mr. Harris rebuts this presumption.

## ARGUMENT

There exist sufficient conditions to ensure Mr. Harris's appearance and the safety of the community. The charged offenses, while serious in nature, do not present any facts that lead to the conclusion that – when sufficient conditions are implemented – Mr. Harris is a flight risk or a danger to the community.

**I.  The Nature and Circumstances of the Offense and the Weight of the Evidence Against Mr. Harris is Not Persuasive Enough to Merit Detention Pending Trial.**

When determining whether a defendant should be released pending trial, the first two factors the Court is to consider are the nature and circumstances of the purported offense, specifically whether the offense is "a crime of violence…or involves a minor victim" and the weight of the evidence against the defendant. 18 U.S.C. § 3142(g) (West 2020). The Government argues that the purported offense here is "both

4

a crime of violence and involves a minor victim." Dkt. 19, Government's Motion for Pretrial Detention at 2. It is important to recognize, however, that Mr. Harris had barely reached the age of majority when the purported criminal conduct occurred.

As a starting point, the competitive cheerleading community in which Mr. Harris grew up is vastly different than the typical middle school and high school environments in which most children grow up. In the "cheer" world, coaches create teams with children of all different ages, largely depending on the child's skill and ability to execute various tumbling stunts. When creating these teams, coaches encourage team members to bond and establish relationships with teammates outside of practice. This type of team building not only establishes lasting friendships, but also mutual trust among teammates. It also ultimately leads to building a strong and unified cheerleading team. However, with any age gap comes a difference in the level of maturity for each child. When younger children are placed onto teams with older children, they are inherently exposed to the older children's communications, relationships, and oftentimes, sexual experiences.

In the early years of Mr. Harris's life, he was fully immersed into the "cheer" world where sexual predators were largely unchecked with children of all ages. At the time of the purported offense conduct described in the Criminal Complaint, Mr. Harris was in most respects a child himself interacting with other children. Even if the allegations in the Criminal Complaint are taken as true, the alleged offense conduct did not include any physical force or threat of force. Unlike many individuals charged with similar offense conduct, Mr. Harris was not a coach or supervisor, but

5

was instead a fellow member of the cheer squads.

Additionally, the Government concedes that due to the nature of the purported offense conduct, Mr. Harris remains a danger "until he receives significant mental health sex offender treatment." Dkt. 19 at 5. If Mr. Harris were to be detained pending trial, he would be unable to receive the proper mental health treatment the Government is proposing he needs. Indeed, the undersigned counsel has already arranged for evaluation and treatment on the outside and Mr. Harris, as well as his proposed third-party custodians, are in full support of this.

## II. The History and Characteristics of Mr. Harris Do Not Support the Government's Position That He is a Dangerous Child Predator.

The third factor the Court is to consider when determining whether a defendant should be released pending trial is the history and characteristics of the defendant, including "the person's character… and mental condition." 18 U.S.C. § 3142(g)(3) (West 2020). By way of background, Mr. Harris was born into crisis and extreme poverty. Growing up, he lived with his single mother, Lizzie Bowman, his sister, ▮▮▮▮▮▮▮, and his sister's son, on public assistance in Bolingbrook, Illinois. At the age of eight, Mr. Harris and his family lived in a single room at the La Quinta Motel adjacent to Interstate 55 with the help of federal funding to subsidize the cost of rent. Living in that motel room as a child, Mr. Harris witnessed his mother deteriorate under the lash of lung cancer. Two years after moving into the motel, Mr. Harris's mother passed away in the very bed he and his mother shared. After his mother's death, his sister ▮▮▮▮▮▮▮ acquired custody of Mr. Harris and they remained at the motel for a time until Mr. Harris's estranged father, ▮▮▮▮▮▮▮,

6

entered the picture. Mr. Harris the Senior took advantage of the public aid his son and daughter were receiving and moved into the motel room. Shortly thereafter, the motel closed due to code violations and the young Mr. Harris found himself homeless once again.

Mr. Harris's hardscrabble home life was not his only burden as his student life at Bolingbrook High School was equally cruel. The children at Bolingbrook High relentlessly ridiculed, mocked, and bullied Mr. Harris throughout his freshman and sophomore years. Mr. Harris was forced to hide his interest in competitive cheerleading in fear of repercussions and unsolicited attention from other students. Mr. Harris struggled with depression and obesity as he tried to cope with the loss of his mother, the incessant bullying in school, and his desperate conditions at home.

In 2015, by an act of Providence, the "cheer moms" and their families rescued Mr. Harris and took on the responsibility of raising the boy they had all come to love. One particular family took Mr. Harris in and raised him as their own child, affording him the opportunity to attend Waubonsie Valley High School. Unlike Bolingbrook High, the Waubonsie Valley community wholeheartedly embraced Mr. Harris, celebrating him in his individuality and being "different." Mr. Harris flourished in this new environment and successfully graduated from Waubonsie Valley High School in 2017 with a full cheerleading scholarship to Navarro College in Corsicana, Texas.

While Mr. Harris enjoyed the good fortune and generosity of his adoptive families of the "cheer" community, it is obvious that the hardships of his younger

7

years had not been professionally addressed. Interviews of Mr. Harris's "cheer family" reveal that despite Jerry's sunny disposition and resilient spirit, he ▬▬▬▬▬ ▬▬▬▬▬▬▬▬▬▬▬, struggled with his own sexual identity, and had great difficulty reconciling the loss of his mother.

### III. There Are Sufficient Conditions to Assure There is No Danger to Any Person or the Community If Mr. Harris Is Released.

The last factor the Court is to consider when determining whether a defendant should be released pending trial is the "nature and seriousness of the danger to any person or the community that would be posed by the person's release." 18 U.S.C. § 3142(g)(4) (West 2020).

Mr. Harris has a vast network of supporters in spite of the serious criminal allegations brought against him. As the Pretrial Services Report indicates, ▬▬▬▬▬▬[2], ▬▬▬▬▬▬, ▬▬▬▬▬, and ▬▬▬▬▬▬▬▬▬▬ are all willing to serve as third-party custodians for Mr. Harris. The undersigned counsel and Pretrial Services have also been in contact with a number of other parents from the "cheer" community who are equally supportive. Each of these putative third-party custodians understand the weight of their responsibility to the Court and intend on honoring this commitment.

Moreover, Mr. Harris is in a position to execute a bond secured by his

---

[2] Ms. ▬▬▬▬▬ is more than just a third-party custodian. She has taken care of Mr. Harris and has been a "mother" to him since his biological mother died. Ms. ▬▬▬▬▬ attended Mr. Harris's senior registration, his first day at school, his senior homecoming, helped fill out his college and FAFSA applications, planned his graduation party, and spent all of the major holidays with him, including Mother's Day.

townhome as added assurance that he will follow the Court's directives. Finally, Pretrial Services' recommendation that GPS monitoring with home detention be imposed, along with precluding Mr. Harris from any internet access, reasonably assures the Court the safety of the community. As mentioned above, Mr. Harris stands ready, willing, and able to participate in mental health evaluation and treatment. Pretrial Services suggests such participation and Mr. Harris's attorneys have made such arrangements. As the Government concedes, this young man is in need of treatment and the MCC has no such resources available. Moreover, the conditions of the global pandemic make entry by treating professionals into the MCC nearly impossible.

Lastly, Mr. Harris is asthmatic which places him at grave health risk if he was to contract the COVID-19 novel coronavirus. https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/asthma.html. He has been in custody at the MCC since September 17, 2020, while the average number of COVID-19 cases have been trending upward in Cook County. https://ccdphcd.shinyapps.io/covid19/. While the MCC and the BOP take steps to ameliorate the spread of COVID-19, the dangers of confinement and transmission of COVID-19 are manifest.

## CONCLUSION

Based on the foregoing and with the support of Pretrial Services, Mr. Harris respectfully submits the Court release him on conditions consistent with the recommendations of Pretrial Services and any other conditions the Court deems appropriate.

                                          Respectfully submitted,

                                          /s/    Todd S. Pugh

Thomas M. Breen
Todd S. Pugh
Jonathan M. Brayman
Robert W. Stanley
Chelsy L. Van Overmeiren
BREEN & PUGH
53 W. Jackson Blvd., Suite 1215
Chicago, Illinois 60604
(312) 360-1001 (t)
(312) 362-9907 (f)
tpugh@breenpughlaw.com

## CERTIFICATE OF SERVICE

The undersigned attorney hereby certifies that the following document:

**DEFENDANT JEREMIAH HARRIS'S MOTION
FOR PRETRIAL RELEASE ON CONDITIONS**

was served on October 14, 2020, in accordance with Federal Rule of Criminal Procedure 49, Federal Rule of Civil Procedure 5, Local Rule 5.5, and the General Order on Electronic Case Filing (ECF) pursuant to the district court's system as to ECF filers.

By: /s/ Chelsy L. Van Overmeiren