UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>JEREMIAH HARRIS | Case No. 20 CR 637<br><br>Heather K. McShain<br>Magistrate Judge |

## ORDER OF DETENTION PENDING TRIAL

Pending before the Court are the government's motion to detain defendant Jeremiah Harris pursuant to Title 18, United States Code, Section 3142, based on danger to the community [19];[1] and the defendant's motion for release from custody [20]. In accordance with the Bail Reform Act of 1984, 18 U.S.C. § 3141 *et seq.*, a detention hearing was held in this case pursuant to 18 U.S.C. § 3142(f) to determine whether there are conditions of release that will reasonably assure the safety of any other person and the community [24, 25]. This Order is a summary of the Court's findings of fact and conclusions of law that were stated more fully on the record during the detention hearing.

### Charges Against Defendant

1. Defendant has been charged in a complaint with one count of Sexual Exploitation of Children, in violation of Title 18, United States Code, Section 2251(a). [1].

---

[1] Bracketed numbers refer to entries on the district court docket. Referenced page numbers are taken from the CM/ECF header placed at the top of filings.

## Applicable Law

2. As an initial matter, the nature of the alleged conduct triggers a presumption that no condition or combination of conditions will reasonably assure the appearance of defendant and the safety of the community. *See* 18 U.S.C. § 3142(e)(3)(E) (identifying offenses involving a minor victim, including 18 U.S.C. § 2551). Both the government and defense agree that the presumption applies. Because of this presumption, defendant has the burden of production to come "forward with some evidence that he will not flee or endanger the community if released. Once this burden of production is met, the presumption is 'rebutted' . . . . the rebutted presumption is not erased. Instead it remains in the case as an evidentiary finding militating against release, to be weighed along with other evidence relevant to factors listed in § 3142(g)." *United States v. Dominguez*, 783 F.2d 702, 707 (7th Cir. 1986). While applying the statutory presumption that defendant should remain detained, the Court is mindful that nothing in this burden shifting process vitiates defendant's constitutionally protected right to be presumed innocent. *See* 18 U.S.C. § 3142(j); *see also United States v. Portes*, 786 F.2d 758, 764 (7th Cir. 1985).

## Burden of Proof

3. The facts supporting a finding that "no condition or combination of conditions will reasonably assure the safety of any other person and the community shall be supported by clear and convincing evidence." *See* 18 U.S.C. § 3142(f). *United States v. Cox*, 1:16-mj-96-MJD, 2016 WL 614333, at *3 (S.D. Ind. Feb. 16, 2016) (citing *United States v. Portes*, 786 F.2d 758, 764–65 (7th Cir. 1985)). The facts supporting a

finding that no condition or combination of conditions could reasonably assure the appearance of the defendant as required must establish such finding by a preponderance of the evidence. *Portes*, 786 F.2d at 764 (adopting preponderance of evidence standard in light of "congressional silence" on the issue). In this case, the government only moves to detain under danger to the community and, as a result, I do not address risk of flight.

## Application of Rebuttable Presumption

4. In the instant case, the Court finds that this presumption has not been rebutted as to the defendant's danger to the community.

5. Defendant argues that the presumption in this case is rebutted given the nature and circumstances of the offense and the history and characteristics of the defendant. [20] 4. The Court, however, does not find that these factors rebut the presumption that no condition or set of conditions will reasonably assure the safety of the community based on the specific facts in this case, and specific consideration of this defendant for the reasons stated on the record at the detention hearing. The presumption is premised on the notion that Congress, in creating the rebuttable presumption, found that certain categories of defendants are more likely to continue to engage in criminal activity while on release. *Dominguez*, 783 F.2d at 707. In order to rebut the presumption, a defendant need not show he is "not guilty of the crime charged."[2] *Id.* Rather, a defendant can rebut the presumption by demonstrating that

---

[2] The *Dominguez* court rightfully found error in the detention decision because part of the district court's rationale was that the defendants had offered no evidence "to rebut the

the "specific nature of the crimes charged," or "something about [the defendant's] individual circumstances suggests that 'what is true in general is not true in the particular case[.]'" *Id.* (quoting *United States v. Jessup*, 757 F.2d 378, 384 (1st Cir.1985)). Here, defendant's community support and lack of criminal history fail to remove this case from the Congressionally mandated presumption that defendants charged with the sexual exploitation of children pose an ongoing threat to the safety of the community. Many cases charging the sexual exploitation of children involve defendants who have strong social and community ties, stable employment, and no criminal history. *See United States v. Conover*, 12-2080, 2012 WL 4846132, at *5 (D.N.J. Oct. 10, 2012) (finding that defendant, who was charged with receipt and distribution of child pornography under 18 U.S.C. § 2252(a)(2)(A), did not rebut presumption despite having no criminal history, long-term employment history with employer willing to continue to employ defendant despite nature of pending charges, and apparent history as a law-abiding citizen: "Nonetheless, what has recently been learned strongly weighs in favor of detention. The fact that defendant has been able to avoid detection for so long evidences his intelligence and cunning."); *United States v. Becker*, 209-cr-141, 2010 WL 566719, at *2 (N.D. Ind. Feb. 12, 2010) (affirming magistrate judge's finding that presumption was not rebutted in § 2251(a) case where defendant had insignificant criminal history, was married with kids, and suitable custodian was proposed); *United States v. Music*, 1:07-CR-21-R, 2007 WL 2067057, at

---

government's evidence that there is probable cause to believe that they were involved in" the charged conduct. *Dominguez*, 783 F.2d at 706.

4

\*5 (W.D. Ky. July 16, 2007) (holding that magistrate judge erred in finding that defendant had rebutted presumption of dangerousness where defendant, charged with interstate transportation of a minor with intent to engage in criminal sexual contact, had no prior criminal history and charge did not involve forcible compulsion: "no prior criminal history does not automatically mandate release"). A lack of criminal history in this type of case means that defendant has been able to avoid detection, and underscores how easy it is for this crime to go undetected. Moreover, while defendant has ties to and support from within the cheer community, it would be completely contrary to Congress' intent in applying the presumption to sex crimes against children if defendant's ties to the cheer community – the very community from which he chose his victims and in which his status within that community assisted him in exploiting his minor victims – could somehow also serve to rebut the presumption in this case. Nor does the Court find defendant's other arguments sufficient to rebut the presumption, for the reasons I articulated on the record during the detention hearing. Indeed, defendant's alleged conduct reveals behavior that defendant cannot or is unwilling to control, the exact type of contact Congress had in mind when it chose to apply the presumption to violations of 18 U.S.C. § 2251(a). For all of these reasons and those stated on the record at the detention hearing, the rebuttable presumption is not rebutted in this case by the reasons offered by the defendant.

6. Even if the Court did find the statutory presumption of detention rebutted, the Court still finds that defendant should be detained in light of the factors

5

identified at 18 U.S.C. § 3142(g) and discussed further below and on the record at the detention hearing.

## Analysis of Statutory Considerations

7. The Court finds the statutory factors enumerated in 18 U.S.C. § 3142(g) support detention of defendant in that the evidence presented before this Court establishes by clear and convincing evidence that the defendant poses a danger to the community and that no condition or combination of conditions are available to mitigate the danger posed. *See* 18 U.S.C. § 3142(e); *Portes*, 786 F.2d at 764–65.

8. In addition to the reasons I stated on the record at the detention hearing, the Court also considered the following in considering and analyzing the statutory factors (*see* 18 U.S.C. §3142(g)(1) – (4)):

   a. Considering 18 U.S.C. § 3142(g)(1), the offense of 18 U.S.C. § 2251(a) is a serious offense involving the sexual exploitation of a child, statutorily identified as one favoring detention in light of the presumption that is triggered. When Congress amended Section 2251 to enhance its penalties, Congress "repeatedly stress[ed] that child pornography is a form of sexual abuse which can result in physical or psychological harm, or both, to the children involved." *United States v. Gall*, No. 13-1266 M, 2013 WL 12192313 at *2 (D.P.R. Nov. 6, 2013) (internal quotation marks and citations omitted). Congress further "found that where children are used in its production, child pornography permanently records the victim's abuse, and its continued existence causes the child victims of sexual abuse continuing harm by haunting those children in future years." *Id.* (internal quotation marks and

citations omitted). "Detaining adults who prey on children for sexual gratification or for the production of child pornography is a legitimate government objective, supporting pretrial detention." *Id.* Given the severity of the harm created by the violation of Section 2251, Congress has mandated a minimum penalty of 15 years and a maximum penalty of 30 years of imprisonment for violation of the statute. The nature and circumstances of the crime as alleged in this case as to this defendant include five to ten minor victims, a continuous course of criminal conduct that spanned well over a year, multiple attempts of actual physical contact with the minor victims, as well as the rape of a fifteen-year-old victim. And, for the reasons stated on the record at the detention hearing, the Court is unpersuaded by the defendant's arguments that the nature and circumstances of the offense do not support detention. [20] 5-6.[3] Accordingly, and as further explained on the record, the nature and seriousness of the offense support detention.

---

[3] Arguing that this factor does not support detention, defendant asserts in his memorandum:

> When younger children are placed onto teams with older children, they are inherently exposed to the older children's communications, relationships, and oftentimes, sexual experiences.
> In the early years of Mr. Harris's life, he was fully immersed into the "cheer" world where sexual predators were largely unchecked with children of all ages. At the time of the purported offense conduct described in the Criminal Complaint, Mr. Harris was in most respects a child himself interacting with other children.

[20] 5. As the Court explained on the record, I do not find that these assertions mitigate the nature and circumstances of the offense. Further, to the extent defendant is attempting to argue that the lines were blurred between adult and minor or that he perceived his alleged conduct as acceptable due to other unchecked sexual predators, those arguments are belied by defendant's actions after learning that he was under investigation in May 2020 for allegations involving a minor boy. After learning of the investigation, defendant did not stop his criminal conduct but, rather, he got rid of his cell phone (which contained evidence of his crimes), obtained a new phone, and recommenced sexually exploiting minors.

      b.      Considering 18 U.S.C. § 3142(g)(2), the weight of evidence against the defendant is overwhelming. The Complaint details significant evidence of criminal conduct, including the accounts of several victims and the evidence the victims have provided from their electronic devices. I also note the defendant's admissions on September 14, 2020, including that: defendant targeted between five to ten minor victims (as young as thirteen years old), relentlessly exploiting them to produce and send sexually explicit photos and videos to defendant (which defendant at times paid the victims to produce); defendant relentlessly asked the minor victims to engage in sex acts; defendant raped a fifteen-year old victim in a public restroom at a cheerleading event; upon being tipped off of the federal investigation in May 2020, defendant dropped his cell phone (containing evidence of his crimes) and obtained a new cell. And the post-arrest investigation has revealed that after obtaining that new cell phone, rather than stop, defendant began communicating again with minor victims and engaging in the same criminal conduct. The weight of the evidence supports detention.

      c.      At the detention hearing, the court covered the third factor, the history and characteristics of the defendant under 18 U.S.C. § 3142(g)(3), in detail and noted the circumstances that weighed in defendant's favor, as well as those that supported detention.

      d.      Under the fourth factor at 18 U.S.C. § 3142(g)(4), the nature and seriousness of any danger posed to individuals in the community strongly supports detention. When evaluating whether a defendant can be detained as dangerous,

8

evidence that a defendant has been a danger in the past can be considered to the extent that past conduct suggests the likelihood of future misconduct. *Dominguez*, 783 F.2d at 707. The Court finds that this defendant's past conduct does indeed suggest the likelihood of future misconduct, as explained on the record during the detention hearing, which include defendant's relentless pursuit of five to ten victims, his sexual assault of a minor in an unlocked bathroom at a cheerleading event, and his actions after learning that he was under investigation in May 2020. As other courts have found, such "alleged activities are of an addictive sexual nature that cannot be suppressed simply be a restrictive set of bail conditions." *United States v. Minnici,* 128 Fed. Appx. 827, 829 (2d Cir. 2005); *United States v. Santiago-Muniz,* No. 3:17-CR-326, 2017 WL 6028347, at *3 (M.D. Pa. Dec. 5, 2017); *United States v. Cox,* Cr. No. 07-20544, 2008 WL 94769, at *4 (E.D. Mich. Jan. 9, 2008). For these reasons and those stated on the record at the detention hearing, defendant's own history reflects that he poses a high level of danger to the community.

9. Finally, I do not find that the proposed conditions of release – that include defendant residing at his home under home incarceration with four third-party custodians present – will reasonably assure the safety of the community. While home incarceration would alert authorities if defendant attempted to leave the house, "[a] danger to the community does not only include physical harm or violent behavior." *Conover*, 2012 WL 4846132, at *4; *United States v. Schenberger,* 498 F. Supp. 2d 738, 743 (D.N.J. 2007). While I have no doubt that the third-party custodians would act in good faith to attempt to prevent defendant from accessing the

9

internet by password protecting their internet capable devices and, as defense counsel suggested, even limit the wi-fi/internet in the house to a hotspot, I find that the type of monitoring that would be required of this defendant under these circumstances is virtually impossible. For the reasons already discussed herein and on the record at the detention hearing, defendant appears to lack control over his conduct and he managed to conceal his alleged conduct from responsible and well-intentioned adults within the cheer community for well over a year. He is proficient in using online technology, he has the financial resources to purchase internet capable devices, and with the third-party custodians present there will be electronic devices in the residence. Under circumstances such as these, "[s]everal courts have recognized the virtual impossibility of controlling access to the internet and other technologies" and found that no conditions of confinement could reasonably assure the safety of the community. *United States v. Petersen,* No. 17-cr-00259-CRB-1/JD, 2017 WL 2179591, at *4 (N.D. Cal. May 17, 2017) (overruling magistrate judge and denying bond to defendant charged with possession of child pornography where proposed conditions included home incarceration with father being with defendant "24 hours a day," no contact with minors, no access to internet or devices that could access the internet, and $500,000 secured bond: "While by no means trivial, these measures are not enough to protect the community. Petersen's modus operandi was to induce trust and betray it. Petersen's commitment to that tactic, and his success with it, raise insurmountable concerns that he cannot be trusted to adhere to conditions restricting his behavior. The fact that the conduct underlying the charge

against him occurred while he lived in his father's home substantially undercuts any assurance that might be derived from his father's offer to be a full-time custodian. Aggravating these concerns is the undisputed fact that Petersen is adept and skillful in using the internet and other technology."); *United States v. Valerio,* 9 F. Supp. 3d 283, 294 (E.D.NY. 2014) ("As part of his bail package, defendant agrees to not possess, much less use or access, a computer or other internet-capable device, and agrees to unannounced searches of the house and all persons therein. Under the circumstances of this case, however, the Court finds these conditions are difficult, if not impossible, to enforce, and otherwise insufficient to assure the safety of the community. Even with the presence of a guard inside the home at all times and the taking of steps to prevent electronic devices from being in the house, there is no way to ensure the full monitoring of defendant's activities. Computers, mobile phones, tablets, etc.—the type of instrumentalities allegedly used to commit the crimes—are ubiquitous and easy to procure or hide, and increasingly even the lowest-level devices have internet functionality."); *Conover,* 2012 WL 4846132 at \*7 (rejecting bond condition that defendant, charged with possession of child pornography, would agree not to possess devices that would access the internet: "Access to the internet is possible through desktop and laptop computers, phones, game consoles, WIFI, hot spots, etc. Given defendant's computer expertise, and his background and character, the Court is not persuaded that meaningful assurances can be given that his prohibited conduct can be stopped"); *Schenberger*, 498 F. Supp. 2d at 744-45 (detaining defendant charged with possession and distribution of child pornography: "Although defendant will

agree not to use or access a computer, this condition is release is difficult to enforce. 'The ubiquitous presence of the internet and the all-encompassing nature of the information it contains are too obvious to require extensive citation or discussion.'") (citing *United States v. Voelker*, 489 F.3d 139, 145 (3d Cir. 2007)); *United States v. Brown,* Nos. M-2-07-290, CR2-08-106, 2008 WL 2098070, at *5 (S.D. Ohio May 16, 2008) (overturning magistrate judge's release order of defendant charged with shipping, receiving, and possession of child pornography: "[E]ven electronic monitoring and home detention do not adequately address Brown's ability to access phones or computers in his mother's home even if steps were taken to try to prevent those items from being present or available in the house."); *United States v. Reiner*, 468 F. Supp. 2d 393, 398 (E.D.N.Y. 2006) (overturning magistrate judge's decision to release on bond defendant charged with possession of child pornography: "Even if the Court were to order electronic monitoring and home detention of the defendant pending trial, that condition would not adequately address his ability to access phones or computers in his home which could be used for the types of illicit activities described above, even if steps were taken to try to prevent those items from being present or available in the house. In this day and age, with devices such as cellphones, Blackberries, and laptops, there are no conditions which can reasonably assure the safety of the community under the particular circumstances of this case if the defendant is released on bail."). This Court finds the reasoning of these other decisions to be persuasive and it reaches the same conclusion in this case. Because the government has presented substantial evidence that defendant has committed

his crimes through the use of technology, and because the ability to completely limit defendant's access to technology while on release does not exist, the Court finds that defendant's release would pose a significant danger to the community.

10. In summary of the above, in addition to those stated on the record at the detention hearing, these 3142(g) factors weigh strongly in favor of detention even if the statutory presumption of detention did not apply. The Court thus concludes that there is clear and convincing evidence that the defendant would be a danger to the community if released. Further, as noted above and on the record at the detention hearing, the Court further finds that none of the offered conditions or combination of conditions of release will reasonably assure "the safety of any other person and the community." *See* 18 U.S.C. § 3142(e).

IT IS HEREBY ORDERED, pursuant to Title 18, United States Code, Section 3142(e)(3), that defendant shall remain in custody until further order of the Court or resolution of this case.

IT IS FURTHER ORDERED that Defendant shall be afforded reasonable opportunity for private consultation with his counsel.

IT IS FURTHER ORDERED that upon order of the United States District Court or on request of an attorney of the government, the Warden of the facility housing Defendant shall deliver Defendant to a United States Marshal for the purpose of an appearance in connection with a court proceeding.

                                                                                    *Heather K. McShain*
                                                                                    HEATHER K. McSHAIN
                                                                                    United States Magistrate Judge

DATE: October 19, 2020.